UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NUTRIEN AG SOLUTIONS, INC.,  ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 4:24-cv-01110-SEP |
| ) | |
| DOUGLAS LIENEKE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff's Motion for Default Judgment, Doc. [7]. For the reasons set forth below, the motion is denied without prejudice. Plaintiff has shown that it is entitled to a default judgment in some amount, but it has insufficiently justified its claims to interest and attorneys' fees. Plaintiff will have 14 days from the date of this Order to remedy the deficiencies set forth below.

FACTS AND BACKGROUND

On or before December 12, 2021, Plaintiff entered into an agreement with Defendant Douglas Lieneke "to supply agricultural materials and services for farming operations on credit." Doc. [1] ¶ 6. Plaintiff provided Defendant credit for payments on his account and alleges that he owes a remaining balance of $83,859.52, including interest and service charges. *Id*. ¶ 11. Outlined in five invoices dated February through July 2023, Defendant's purchases included $44,000 for corn seed, $15,975 for soybean seed, and $23,977.50 for other agricultural materials. *See* Docs. [7-1] at 2-10; [10-1] at 1. Despite Plaintiff's demands, Defendant has not paid the balance on the account apart from a $10,000 payment on July 9, 2024. Doc. [1] ¶ 17; Doc. [10] ¶ 12. Plaintiff is incorporated under the state of Delaware, and its principal place of business is in Colorado. Doc. [1] ¶ 1.

Plaintiff filed this action on August 13, 2024, bringing claims for action on account and unjust enrichment. The company sought actual damages in the amount of $83,859.53, plus interest as allowed by statute, attorneys' fees, and costs of the suit. *Id*. ¶¶ 13, 18. The record reflects effective service of summons on August 22, 2024. Doc. [4]. Defendant failed to file an answer or other responsive pleading within the time required by Federal Rule of Civil Procedure 12. Plaintiff moved for Clerk's entry of default, which was granted in October 2024. Doc. [6].

1

Shortly thereafter, Plaintiff filed the Motion for Default Judgment. Doc. [7]. Defendant has not appeared or filed any response.

In its Complaint, Plaintiff alleges that Defendant agreed to pay a 2% per month (24% APR) finance charge on any unpaid balances, citing the Credit Agreement. Doc. [1] ¶¶ 6-7. Plaintiff did not provide the Agreement until eight months later, and it lacks any mention of a 24% annual interest rate on unpaid accounts. *See* Doc. [8]. The only documentary evidence supporting Plaintiff's alleged 24% interest rate is a monthly account statement dated May 2024 and filed more than ten months after the Complaint. *See* Doc. [10-3] at 5. Because the monthly account statement is dated more than two years after the formation of the Agreement, it cannot prove that Defendant agreed to a 24% interest rate in the Agreement.

In support of its request, Plaintiff submits the following: (1) Credit Agreement signed by Defendant,[1] Doc. [8]; (2) Affidavit of Douglas Stipich, a Nutrien credit collections analyst, Doc. [7-1] at 1; (3) invoices dated February 28, 2023, through July 17, 2023, *id*. at 2-9; Doc. [10-1][2] at 1-3; (4) account ledger showing the total amount owed as of August 9, 2024, Doc. [7-1] at 10; and (5) a monthly account statement dated May 2024. Doc. [10-3] at 5. Upon review of Plaintiff's original submissions, the Court ordered Plaintiff to supplement its request for damages. *See* Doc. [9]. Specifically, the Court sought clarification of Plaintiff's requested interest[3] and attorneys' fees and an omitted invoice. Plaintiff then provided the omitted invoice and requested a specific sum of attorneys' fees. *See* Docs. [10], [11]. Plaintiff also made a specific request for prejudgment interest according to the account terms and post-judgment interest according to Missouri statute. Doc. [10] ¶ 14. Plaintiff's request for default judgment

---

[1] Because the Complaint references the "Account Agreement" and Plaintiff later filed the Agreement with the Court, the Court considers it incorporated by reference. *See* Doc [8].

[2] Invoice No. 50605462 was erroneously omitted from the Motion for Default Judgment. Plaintiff provided it after the Court asked for clarification regarding the missing invoice. See Doc. [9] at 2.

[3] *Compare* Doc. [7] ("Plaintiff prays that this Court enter a Judgment of Default in favor of Plaintiff and against Defendant Douglas Lieneke in the amount of Eighty-Three Thousand Eight Hundred Fifty-Nine and Fifty-Three Cents ($83,859.53), *interest at the statutory amount from the date of judgment*, and other and further relief the Court deems proper in the circumstances." (emphasis added)), *with* Doc. [1] ¶¶ 13, 18 ("Plaintiff prays the Court enter judgment in its favor and against Defendant Andrew Pierce for actual damages on Account No. 1917369 in the amount of Eighty-Three Thousand Eight Hundred Fifty-Nine and Fifty-Three Cents ($83,859.53), *plus interest as specified by the account or allowed by statute*, for its attorneys' fees and costs of suit, and for such other and further relief as this Court deems just and proper." (emphasis added)).

thus appears to involve four distinct interest rates:  (1) the 0% to 1.9% special finance rates that applied from Defendant's purchase date until November or December 2023; (2) a subsequent 24% annual interest rate amortized monthly; (3) beginning March 1, 2024, a 24% annual interest rate calculated daily because "Nutrien changed the way they calculate those charges"; and (4) beginning with the October 16, 2024, Clerk's entry of default, post-judgment interest at 9%, which Plaintiff describes as "the maximum post-judgment allowable interest in Missouri, pursuant to Missouri Revised Statutes Section 408.040 (2025)."  Doc. [10] ¶¶ 12, 14.[4]

Because Plaintiff's submissions had referenced only Missouri law, but the Agreement states that Colorado law governs, the Court ordered Plaintiff to show cause "(1) why it is entitled to default judgment under Colorado law, or (2) why the Court need not consider Colorado law, notwithstanding the governing law provision in the Credit Agreement."[5]  Doc. [12].  In response, Plaintiff argued that it "adequately plead[s] both claims under Colorado or Missouri law, and Plaintiff's evidence supports relief under both Colorado and Missouri law."  Doc. [13] ¶ 9.

### LEGAL STANDARD

Whether to grant a default judgment is a question within the discretion of the Court.  *Weitz Co. v. MacKenzie House, LLC*, 665 F.3d 970, 977 (8th Cir. 2012).  Per Federal Rule of Civil Procedure 55, default judgment is appropriate when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  After the Clerk has entered default against the defendant, the facts alleged in the plaintiff's complaint are generally taken as true.  *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010).  But allegations relating to damages must be proven with a reasonable degree of certainty.  *Everyday Learning Corp. v. Larson,* 242 F.3d 815, 818 (8th Cir. 2001); *Stephenson v. El-Batrawi*, 524 F.3d 907, 916-17 (8th Cir. 2008).  A litigant "cannot satisfy the certainty requirement simply by requesting a specific amount."  *AGCO Fin., LLC v. Littrell*, 320 F.R.D. 45, 48 (D. Minn. 2017) (quoting 10A Charles Alan Wright, Arthur R. Miller

---

[4] The Court notes that judgment is entered upon the entry of a default judgment order, not upon the clerk's entry of default.  Further, according to the statute Plaintiff cites, "all such judgments and orders for money upon contracts bearing more than nine percent interest shall bear the same interest borne by such contracts and all other judgments and orders for money shall bear nine percent per annum until satisfaction made as aforesaid." MO. REV. STAT. § 408.040 (2025).

[5] *See* Doc. [10] ¶ 14 (requesting post-judgment interest "pursuant to Missouri Revised Statutes Section 408.040"); Doc. [8] ¶ 18 "[t]his Agreement will be governed by and interpreted in accordance with the laws of the State of Colorado, without regard to internal principles of conflict of laws."

3

& Mary Kay Kane, FED. PRAC. & PROC. § 2683 (4th ed. 2016)).  Before the Court may enter a default judgment awarding a plaintiff its requested relief, it must find that "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Murray*, 595 F.3d at 871 (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FED. PRAC. & PROC. § 2683 (3d ed. 1998)).

"The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:  (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  FED. R. CIV. P. 55(b)(2).  Where "the findings and judgment regarding damages in the instant case are capable of being computed on the basis of facts of record," however, "the district court need not hold an evidentiary hearing on the issue of damages."  *Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 (8th Cir. 1988) (quoting *In re Consol. Pretrial Procs. in Air W. Sec. Litig.*, 436 F.Supp. 1281, 1286 n.6 (N.D. Cal. 1977)).  Before granting a default judgment, the Court must "satisfy itself that the moving party is entitled to judgment, including by reviewing the sufficiency of the complaint, and the underlying substantive merits of its claim."  *Skylight Imaging Ltd., LLC v. Practecol, LLC,* 2020 WL 4043045, at *3 (E.D. Mo. July 17, 2020) (citation omitted).

## DISCUSSION

Plaintiff's motion poses four questions:  (1) which state's law to apply; (2) whether Plaintiff is entitled to judgment on the substantive merits; (3) if Plaintiff is entitled to default judgment, what interest is due; and (4) whether to grant Plaintiff's requested attorneys' fees.

I. **An unambiguous choice-of-law provision mandates application of Colorado law.**

"Federal courts sitting in diversity apply the choice-of-law rules of the forum state." *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009).  "Under Missouri law, a choice-of-law clause in a contract generally is enforceable unless application of the agreed-to law is 'contrary to a fundamental policy of Missouri.'"  *Id.* (citation omitted); *H & R Block Tax Servs. LLC v. Franklin*, 691 F.3d 941, 943 (8th Cir. 2012).  But where the laws of two jurisdictions would "produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question."  *Ronnoco Coffee, LLC v. Westfeldt Bros.,*

4

*Inc.*, 939 F.3d 914, 920 (8th Cir. 2019) (quoting *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).

There is a genuine conflict as to at least one aspect of Plaintiff's motion:  Colorado and Missouri have established different statutory interest rates.  CO. REV. STAT. § 5-12-102 (2025) (eight percent per annum compounded annually); MO. REV. STAT. § 408.040(2) (2025) (nine percent per annum).  Plaintiff has not argued that application of the choice-of-law provision in the contract would be "contrary to a fundamental policy of Missouri." *Cicle*, 583 F.3d at 553.  Therefore, the Court applies Colorado law in accordance with the contract's unambiguous text.

**II.     Plaintiff is entitled to judgment on his claim for action on account.**

To establish an action on account claim under Colorado law, a plaintiff must establish "(1) a statement for sums due presented by the plaintiff to the defendant; [and] (2) an agreement between the plaintiff and the defendant that the account is correct and that the agreed amount is due from the defendant to the plaintiff." *Moore v. Kingdom Bldg. Constr. & Fox Chase*, Colo. Dist. LEXIS 248, at *15 (D. Colo. June 22, 2023) (citing *Rhode, Titchenal, Baumann & Scripter v. Shattuck*, 619 P.2d 507, 508 (Colo. App. 1980)).  "An allegation, in general terms, of an indebtedness in a sum certain for goods sold and delivered, is a sufficient statement of a cause of action." *Messenger v. Woge*, 78 P. 314, 315 (Colo. App. 1904).  Taking the facts alleged in the Complaint as true, the Court finds Plaintiff has stated a legitimate cause of action for action on account against Defendant for purposes of default judgment.

Upon review of the documentary evidence, the Court is satisfied with the substantive merits of Plaintiff's claim, setting aside the amount of interest due.  The Complaint asserts that Defendant requested the materials referenced in Docs. [1-1], [1-2], and [10-1].  Plaintiff proffers five invoices totaling $83,952.50, including $44,000 for corn seed, $15,975 for soybean seed, and $23,977.50 for other agricultural materials purchased by Defendant. *See* Docs. [7-1] at 2-10; [10-1] at 1.  Plaintiff submits the Affidavit of Nutrien Credit Collections Analyst Douglas Stipich, wherein Stipich attests to Plaintiff's delivery of the items. Doc. [5-1] ¶ 2.  Stipich also attests that the agreed price for the goods and services provided to Defendant was reasonable. *Id*.  Further, Plaintiff acknowledges a $10,000 payment by Defendant on July 9, 2024, reducing the balance due by $10,000.  *See* Doc. [1-2] at 1; [10] ¶ 12.  Thus, Plaintiff has adequately established that Defendant owes it at least $73,952.50.

Although Plaintiff also states a claim under unjust enrichment, the Court need not address its merits. A "party generally cannot recover for unjust enrichment . . . when there is an express contract addressing the subject of the alleged obligation to pay." *Gravina Siding & Windows Co. v. Gravina*, 516 P.3d 37, 45-46 (Colo. App. 2022) (quoting *Pulte Home Corp. v. Countryside Cmty. Ass'n*, 382 P.3d 821, 833(Colo. 2016). Because the Credit Agreement governs the dispute, the Court denies the unjust enrichment claim.

### III.  Plaintiff has not met its burden of establishing the interest it is due.

As discussed above, Plaintiff's request includes four distinct interest rates: (1) the 0% to 1.9% special finance rates that applied from Defendant's purchase date until November or December 2023, (2) a subsequent 24% annual interest rate amortized monthly, (3) beginning March 1, 2024, a 24% annual interest rate calculated daily, because "Nutrien changed the way they calculate those charges,"[6] and (4) beginning with the October 16, 2024, Clerk's Entry of Default, post-judgment interest at 9%, "the maximum post-judgment allowable interest in Missouri, pursuant to Missouri Revised Statutes Section 408.040 (2025)." Doc. [10] ¶¶ 12, 14.

Plaintiff generally requests "interest as specified by the account or allowed by statute." Doc. [1] ¶ 13; *see also* Doc. [10] ¶ 14 ("Plaintiff requests an award of interest pursuant to the account terms up and until the date of entry of judgment, and interest at 9% thereafter, which is the maximum post-judgment allowable interest in Missouri, pursuant to Missouri Revised Statutes Section 408.040"). But the Court cannot discern what "interest as specified by the account" means within the circumstances of this case. The Agreement provided to the Court does not state any interest rate. *See* Doc. [8]. The cover sheet provides a place for Defendant to request an interest rate under "Nutrien Extended Terms Account," but it is blank. *Id.* at 1. Plaintiff alleges that the Agreement "provided that any unpaid balances would be subject to a 2% per month (24% percent APR) finance charge," but it has not identified any such provision. *See* Doc. [1] ¶ 7; Doc. [8].

Turning to the account invoices attached to the Complaint, each provides "Payment Terms" consisting of an APR of either 0% or 1.9%, due either November 25, 2023, or December 25, 2023. Doc. [1-1] at 1-8; *see also* Doc. [10-1] (originally omitted invoice). Further, under

---

[6] Doc. 10 ¶ 12 ("Prior to March 1, 2024, the rate was calculated by multiplying 2% by the unpaid open invoice balance as of the last day of the month. In March of 2024, NUTRIEN changed the way they calculate those charges from a flat 2% monthly basis to a daily basis and with 2024 being a leap year, 366 days were used when making that calculation.").

6

"Program Description," each invoice contains a statement like, "Nutrien Financial in partnership with Brevant offer 0% financing due November 25, 2023." *Id.* Plaintiff explains that these 0% and 1.9% interest rates are "special finance rate programs" that ended on the provided due dates, when the "Nutrien Financial Extended Terms financing" began to apply. Doc. [10] ¶¶ 11-12. Plaintiff proffers an affidavit of Douglas Stipich, Nutrien Credit Collections Analyst, asserting that interest accrues at the rate of "24 percent (2%) per month per annum, or as allowed by statute" for past due accounts. Doc. [5-1] ¶ 3. But again, the Account Agreement signed by Defendant does not reflect a 24% annual interest rate. Further, if the parties had contracted to a fixed 24% annual interest rate, Plaintiff could not adjust the substance of their interest rate calculation mid-contract. Doc. [10-2] ¶¶ 7-9 ("In March of 2024, [Nutrien] changed the way they calculate those charges from a flat 2% monthly basis to a daily basis[.]").

The only documentary evidence of a 24% interest rate is a monthly account statement dated May 2024—more than two years after the December 2021 formation of the Credit Agreement. Doc. [10-3] at 5. That statement is itself equivocal as to interest rate. On page 3, it lists interest rates from 0 to 1.9% for each past due account, while on page 5, it lists a 24% interest rate upon default. Doc. [10-3] at 3, 5. On page 3, the statement explains "[p]lease note finance charges are calculated based off the interest rates and balances listed above [0% and 1.9%]." *Id.* at 3. But the amount provided, $9,620.03, does not follow from those provided numbers. *Id.* On page 5, the statement provides that "[a]ny invoice not paid in full by the 25th day of the month will be assessed a finance charge of 2% per month (24.0% APR) except as listed below. The finance charge will be computed as of Nutrien's accounting month end closing and each succeeding month end until the balance is paid in full." *Id.* at 5 ¶ 7.

The account statement also contains conflicting directions about which document governs in the event of conflicts. It says both, "[i]n the event of any conflict between the terms of the Invoice statement and the Customer Profile (Credit Application), <u>the terms of the invoice shall control</u>," and a few paragraphs later, "[a]ny terms contained in any . . . invoice, or similar document, which are inconsistent with or in addition to the terms contained in the Agreement shall be deemed rejected and shall form no part of the Agreement . . . <u>the terms of the Agreement shall govern and prevail</u>. The terms of the Agreement may not be amended or waived except in a writing signed by the parties hereto." *Id.* ¶¶ 6, 9 (emphasis added). Meanwhile, the Credit Agreement, also titled the Credit Application, states that, "[i]n the event of a conflict between

7

any of the foregoing documents [including invoices and account statements], the terms of this Agreement shall control unless otherwise set forth in this Agreement." Doc. [8] ¶ 22.

Based on the information provided, this Court cannot determine what "interest as specified by the account" means in the context of this case. Doc. [1] ¶ 13. And Plaintiff's request for interest in accordance with Missouri statute is inconsistent with the Agreement's unambiguous choice-of-law provision. Plaintiff will have 14 days from the date of this Order to provide sufficient factual and legal support for a specific amount of interest.

### IV.     The Court denies Plaintiff's requested fee award.

Plaintiff similarly fails to justify its request for attorneys' fees. In a similar case, Plaintiff's motion for default judgment was denied without prejudice with instructions to establish its fee award "by presenting adequate documentation of its efforts in litigation." *Nutrien v. Abell*, No. 2:19-cv-00032-CDP (E.D. Mo. Jun. 6, 2019) Doc. [15] (citing *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 575 (8th Cir. 1996)). The Court stated there that it could not award the requested fee "because the supporting affidavit lacks critical information such as the customary fee charged, whether the fee is fixed or contingent, and, if based on an hourly rate, the time and labor this litigation required." *Id.* (citing *McDonald v. Armontrout*, 860 F.2d 1456, 1459 n.4 (8th Cir. 1988) (describing the factors to be considered when determining the fee award). Subsequently, Plaintiff provided billing records detailing its work and its request for $4,138.50 in fees was granted. *Nutrien v. Abell*, No. 2:19-cv-00032-CDP (E.D. Mo. Jun. 13, 2019) Doc. [17].

Here, the contract requires Defendant to pay Plaintiff's reasonable attorneys' fees. The Credit Agreement states "[b]uyer is liable for and shall pay all reasonable costs and expenses of every kind incurred by Nutrien in connection with the collection of the Credit Obligations, including without limitation, reasonable attorneys' fees and court costs." Doc. [8] ¶ 11. After the Court requested clarification on Plaintiff's requested attorneys' fees, Doc. [9] ¶ 3, Plaintiff provided a bit more information. Doc. [10]. Plaintiff explained that it sought $8,325.50 in attorneys' fees, attaching in support "its Memorandum of Costs, Affidavit of Patrick R. Douglas, Redacted Credit Agreement, and Redacted Billing Invoices." *See* Doc. [10-4]. Plaintiff's Memorandum of Costs records a $405 filing fee, $50.10 in service fees, $20.40 in certified mailing costs, and $7,850 for its work on the case. *Id.* at 1-2. The affidavit of Patrick R. Douglas states the same. *Id*. at 5. But the attached credit agreements and billing invoices regard only the

purchase of agricultural equipment between Defendant and Plaintiff and shed no light on the legal work performed in this case. *Id.* at 7-19.

Plaintiff has not provided enough information for the Court to determine the reasonableness of the requested fees. As in *Nutrien v. Abell*, Plaintiff has not provided critical information such as the customary fee charged, whether the fee is fixed and contingent, and the time and labor expended on this litigation. Plaintiff will have 14 days from the date of this Order to provide sufficient factual and legal support for its request for attorney fees.

### CONCLUSION

Although Plaintiff is entitled to judgment on its claim for action on account, it has not sufficiently justified its requests for interest and attorneys' fees.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment, Doc. [7], is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that, **no later than October 13, 2025**, Plaintiff may file a renewed motion for default judgment providing sufficient legal and factual justification for its request for interest and application for costs and attorneys' fees.

Dated this 30th day of September, 2025.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE